In re Estate of Irving Narber.

Emeric Narber et al., Appellants, v. Belford Narber et al., Appellees.

No. 40595.

714

JANUARY 13, 1931.

*Tobin, Tobin & Tobin*, for appellants.

*Wheeler, Elliott & Shuttleworth, T. M. Ingersoll*, and *G. E. Knapp*, for appellees.

EVANS, J.—I. We are first confronted with a motion by defendants to dismiss the appeal, such motion having been submitted with the case.

The will under contest is that of Irving Narber, Sr., who died in November, 1929, survived by eight children, all of whom were beneficiaries under the will. Two of them were proponents of the will, and two of them are contestants thereof. Of the other four children, one of them became a witness for the contestants, and the other three have been nonparticipants in the controversy. The names of the children appear in the record as follows, in the order of age: Belford, Irving, Ralph, Homer, Emeric, Florence, Ethel, and William. The purported proponents are Emeric and Florence. The purported contestants are Belford and Ralph. The nonparticipants are Homer, Ethel, and William. The estate consisted in the main of 720 acres of unencumbered farm land. The will purported to dispose of all of it. The sons were the beneficiaries of the farm-land devises, and other provision was made for the daughters. Emeric and Florence were named as executors of the will, and they became the proponents thereof. The will created a trust, and named Emeric and Florence as the trustees. The trust estate consisted of a 400-acre farm,

which was devised to the trustees for the benefit of the sons Belford, Irving, Ralph, and William during their lives. The creation of this trust and the limitations thereof became the bone of contention that resulted in the contest.

The motion of appellees to dismiss the appeal is predicated upon the following affirmations: That, immediately upon the return of the adverse verdict of the jury, the proponents, Emeric and Florence, brought an action of partition, impleading therein all the other children of the decedent; that, in their notice of such action and in their petition filed therein, they asserted that the decedent died intestate, and that his eight children took each an undivided one-eighth part of the lands described in the petition; that they thereby waived any right of appeal, and in effect performed the adverse judgment.

The affirmations upon which the motion is predicated are sustained only in a qualified sense in the record. The plaintiffs in the alleged partition suit did not assert that the decedent died intestate, and did not assert that the respective interests of the children were one-eighth part each. Emeric and Florence Narber did serve notices, and did file a petition in a purported action, which was somewhat nondescript. In their notices and in their petition they recited the fact of the execution of the will and the contest thereupon and the adverse verdict of the jury and the judgment of the court. They also averred, in substance, that, unless such judgment were reversed, it would result in intestacy, and that, in such event, the interests of the children in the land would be an undivided one eighth each. It declared in terms that the right of appeal was not waived, and purported to make its allegations and its prayer subject to the action of the Supreme Court on appeal. What the purpose of such a proceeding was, is not made to appear in the record. Its net effect was possibly to operate as some sort of a *lis pendens*. It purported to hold proceedings in the district court in abeyance in the partition suit until the will contest could be heard and decided in the Supreme Court. The contestants appeared in the partition case and filed their answer and a cross-petition. They did not assail in any manner the right of the plaintiff to maintain such an action in such form. They made no issue of fact upon any allegation. They filed a cross-petition, wherein they made the definite allegations of intestacy, and wherein

they claimed the right of inheritance in the property. The propriety of holding the partition proceedings in abeyance until after a hearing of the will contest in this court was not questioned by the defendants therein.

In the meantime, the proponents filed their exceptions in the will contest case and their motion for a new trial. This motion was taken under advisement by the district court, and ruled on adversely to the proponents on June 17th. The appeal was promptly taken. The abstract was filed on August 11th. For the purpose of a speedy hearing and submission of the appeal, all parties co-operated. Appellants and appellees mutually stipulated the dates upon which their respective arguments were to be served, and waived the statutory provisions. This was done for the mutual purpose of bringing the appeal to a hearing in this court at its first term following the adverse verdict in the district court. Pursuant to these stipulations, the arguments were filed, and the case was submitted to us on November 20th. The motion to dismiss now under consideration was filed on November 6th. The question presented by the motion is whether the institution of the partition proceeding, such as it was, necessarily operated, as a matter of law, to bar or waive the right of appeal by appellants. The general rule for which the appellees contend in their motion is summarized from the authorities in 3 Corpus Juris 664 and 665, as follows:

"A party may not only waive his right to appeal or maintain proceedings in error by express agreement or stipulation, but a waiver may also be implied from, or he may be estopped by, an act or agreement which is inconsistent with such right. A waiver cannot be implied, however, nor can an estoppel arise, from acts or agreements which are not clearly inconsistent with an appeal. The right of appeal is favored by the law, and it will not be held to have been waived except upon clear and decisive grounds. * * * If a person voluntarily acquiesces in, or recognizes the validity of, a judgment, order, or decree, or otherwise takes a position which is inconsistent with the right to appeal therefrom, he thereby impliedly waives his right to have such judgment, order, or decree reviewed by an appellate court. But, in order to bar the right of appeal on the ground of acquiescence, the acts relied upon must be such as to clearly and

unmistakably show acquiescence, and it must be unconditional, voluntary, and absolute.''

Appellees also contend that the rule of election as between inconsistent remedies applies in the case. They also contend for an estoppel.

We deem it clear that the doctrine of election of remedies has no application to the case. The only remedy open to the proponents was to proffer the will for probate. This they did. They defended the contest. They are still defending it, and still contending for the validity of the will. The fact that they have recognized in the partition proceeding that an affirmance of the case on their appeal will result in intestacy and a distribution of the property other than that provided in the will, is not necessarily inconsistent with their insistence upon its validity. The question of waiver of the right of appeal presents a somewhat different point of view. A waiver implies intent. If, in bringing the partition proceeding, they intended to waive the appeal, then doubtless they did waive it. But the recitals of their petition and of their notices indicate a continuing purpose to prosecute their appeal, and to make allegation and prayer, subject to the contingency of a reversal on appeal. Whether they had a right to maintain such a proceeding in the district court is not the question before us. Whether yea or nay, they did have a right to make known their intention in the matter of such appeal. They did make it known. We perceive no reason for saying that their assertion of intent to prosecute their appeal should be deemed evidence of their intent to waive their right of appeal.

Nor can it be said that the bringing of such tentative proceeding operated as a performance of the judgment entered in the will contest. It is to be observed also that there is a want of identity, in a legal sense, of parties in the two proceedings. Emeric and Florence, as the proponents of the will, were acting not only in their own behalf individually, but as representatives of the other beneficiaries of the will. They are not acting in such capacity in the purported partition proceeding. Suppose, for instance, that a non-member of the family had been appointed as executor and trustee and were the proponent of the will, the prosecution of an appeal would be within his right and within the scope of his duty. If, in such a case, two of the heirs

had brought a partition suit, could it be said that the pendency of such an action barred the proponent from the right of appeal? The duty of the proponents in this case and the scope of it are precisely the same as they would be if they were not members of the family. It is the *proponents* that have appealed, and not the *heirs*. Other beneficiaries of the will, though non-participants in the contest or in the defense against it, are yet entitled to the benefit of a consideration of the case on appeal. The fact that they have been served with notice of a partition proceeding can have no effect upon their rights in the will contest. This furnishes an added reason why the motion should not be sustained.

Nor do we wholly overlook the fact that the appellees permitted the appellants to prepare their appeal and to incur the expense thereof, and delayed the filing of their motion until November 6th. In the meantime, by stipulations and otherwise, they had clearly acquiesced in the asserted right of appeal. So that, if the question be deemed to involve a species of estoppel or waiver, then the estoppel against the appellees is quite as effective as that against the appellants.

The motion must be overruled.

II. The will under consideration was made in January, 1928, when the testator was about 70 years of age. It was made by his regular counsel, who had been such for 12 or 14 years. It was not made in the presence of any beneficiary. The testator was left a widower in the year 1902. His eight children ranged in age from three years up to eighteen. He was a competent business man, and had accumulated property to the value of $138,000, consisting mainly of 720 acres of farm land and a home in the city of Cedar Rapids. He appears to have kept his family together until its members attained their respective majorities. They all, save Ethel, continued to live in Benton County, in the near vicinity of the old home. Their relation to their father was at all times affectionate. By his will the testator gave to Emeric and Homer 160 acres each. For his other four sons he made a trust provision. He devoted the income of his 400-acre farm, worth $80,000, to his four sons Belford, Irving, Ralph, and William. He named Emeric and Florence as trustees of the trust, as well as executors of the will.

He gave only the income to the four sons, the same to be divided between them equally, and in case of the death of one or more, the survivor to take the whole. After the death of the last survivor, the property was to revert to his estate. No provision appears for grandchildren or for the wives of the beneficiaries. The reasons for these restrictions upon the four sons were not indicated in the will. The record discloses that, at the time the will was made, the sons Belford and Irving were insolvent, one of them having been discharged in bankruptcy a few months previous, and the other being discharged in bankruptcy a few months thereafter. William, the youngest, had been married and was divorced, his divorced wife having custody of their child. As to Ralph, it appears that the relations between the father and the wife of Ralph were somewhat strained. The four beneficiaries of this trust were married, and two of them had children. It was this trust feature of the will which appears to have stimulated the contest. It was the natural target of attack. The contest was predicated upon two grounds. The first was that the testator was mentally incapacitated to make the will; the second was that the making of the will had been induced by undue influence exercised by Emeric and Florence. Testimony was introduced in purported support of both of these grounds of contest.

At the close of the evidence, and before argument to the jury, the contestants claimed the right to open and close the argument, and in support of such claim they stated of record that they dismissed their contest so far as the first ground was concerned. In effect, they conceded the mental capacity of the testator to make the will. Responsive to this dismissal, the court awarded to the contestants the right to open and close the argument, and such right was exercised.

In giving his instructions to the jury, the court seems to have overlooked the concession and dismissal made by the contestants, as here noted, and one of the assignments of error on this appeal is predicated upon the instructions of the court on the subject of mental capacity. The court did not, in terms, advise the jury of the withdrawal of that issue from their consideration. For the purpose of considering this assignment of error, we set forth Instructions 10 and 11, as follows:

"10. A person of sound mind,—that is, one who has suf-

ficient mental capacity to make a valid will,—within the meaning of the law in this case, is one who has intelligent knowledge of the act he is engaged in, a knowledge of the property he possesses, and intelligent perception and understanding of the disposition he desires to make of it, and of the persons he desires shall be the recipients of his bounty, and the capacity to recollect and comprehend the nature of the claims of those who are excluded from participating in his bounty; a mind capable of exercising judgment, reason, and deliberation, and capable of weighing the consequences of his will to a reasonable degree, and the effect of it upon his estate and family, at the time of the execution of the will. It is not necessary that he be competent to make contracts or transact business generally, nor that the mind retain all the vigor and force incident to youth, or that which attends upon robust physical health, in order that he may have this capacity. The mere fact, standing alone, that a person is old, in feeble health, or that his memory does not possess the vigor of youth or of earlier years, or the fact that he has excluded from his bounty some or all of his legal heirs, or that his mind has reached that uncertain stage that would render him incapable of making a contract, or engaging in complex or intricate business matters, will not, in and of themselves, defeat a will executed by him if, notwithstanding this, he retains sufficient mind to comprehend the natural objects of his bounty, the nature and extent of his estate, and the disposition he wishes to make of it, with the full appreciation of those whom he desires to be the recipients of his bounty.''

''11. Next you will consider the other claim of the contestants,—that is, that the said will was procured by undue influence exercised over the said Irving Narber by Emeric Narber and Florence Narber, or either of them. Upon this issue the burden of proof is upon the contestants, to prove by a preponderance of the evidence that the will in question was procured and brought about through undue influence exercised over the said Irving Narber by the said Emeric Narber or Florence Narber. Upon this question you are instructed that the influence exercised over the said Irving Narber sufficient to defeat his will, as expressed in the will, must go to the extent of destroying in some degree his free agency: that is, it must appear that the said Emeric Narber or Florence Narber exercised

such influence over the deceased, at the time of the making of the will, that the instrument signed by him and introduced in evidence does not express the will, wishes, desire, and purpose of the testator in relation to the disposition of his property after his death. While mental weakness, of itself, may not be sufficient to invalidate a will, it is a circumstance of great importance in determining the effect and influence of other circumstances, if any, bearing upon this question. But in order to justify you in finding that the will was the result of undue influence exercised by Emeric Narber or Florence Narber, the evidence must show that such influence was actually exercised or existed, and was potential in inducing the execution of the will by the said testator, as claimed. Where the provisions of the will are unreasonable or extraordinary, if they are such, the fact of mental weakness may be considered, particularly if undue influence is actually proved, or the relations of the parties or other circumstances are such as reasonably warrant the presumption of undue influence. It must appear that the influence exercised was such that it overcame the testator's judgment to some degree, and induced him to execute an instrument as his last will and testament that did not express his will, wish, and desire with respect to the disposition to be made of his property after his death. If the will as made expresses the real desire, wish, will, and purpose of the testator as it existed at the time of the making of the will, and this wish, will, and desire and purpose was not induced by improper influence exercised by the proponents or either of them, but was the free and voluntary exercise of the reason, judgment, and wish of the testator with reference to his property, then the will will be valid, *provided you find that he had sufficient testamentary capacity, as hereinbefore explained.*"

It will be seen at a glance that these instructions submitted to the jury the issue of mental capacity.

It is contended by the appellees that the withdrawal made by them in the lower court was so done in the presence of the jury. There is no claim that the jury was addressed on the subject in any way, either by court or counsel. It was not for the jury to judge for itself what it should consider or not consider. In the course of a trial, much is said by counsel to the court which does not concern the jury, even though said in its pres-

ence. Some jurors may hear it, and some may not. They are repeatedly cautioned to consider nothing but the evidence that is permitted to be introduced before them, and to be guided solely by the instructions of the court. What is said by counsel to the court can be taken into consideration by the jury only when the court so advises them. Even if the jury had heard and understood what was said by counsel, it would still be its duty to follow Instructions 10 and 11 given by the court. We see no escape from holding that the giving of these instructions completely negatived the withdrawal of the issue by counsel.

The error was necessarily prejudicial.

III. Many other assignments of error are laid in the record. They relate in the main to rulings on admission of evidence. Only elementary questions are presented by them. In view of the fact that we must remand the case for a new trial, and that before a jury, we are not disposed to dwell unduly upon the various features of the evidence. A discussion of the evidence would tend to work prejudice to one party or the other in a jury submission. We think it ought to be said, however, that considerable immaterial evidence on behalf of the contestants was admitted into the record, and that the rulings of the court gave to the contestants a rather loose rein. In view of a reversal on the ground already indicated, we need not pass seriatim upon the many rulings.

For the reason indicated, the judgment below is—*Reversed.*

All the justices concur, except GRIMM, J., who did not participate.